IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

BARBARA EKNO,                              No. Civ. S-06-2148 RRB EFB

          Plaintiff,              **Memorandum of Opinion
                                         and Order**

     v.

NORTHWESTERN MUTUAL LIFE
INSURANCE COMPANY,

          Defendant.
_____/

     Plaintiff Barbara Ekno ("Ekno") brought an action against

Northwestern Mutual Life Insurance Company ("NWML") seeking

judicial review of NWML's denial of long-term disability ("LTD")

benefits under her employer's ERISA-based plan.[1]  Ekno now moves

for summary adjudication.  NWML filed a cross-motion for summary

_____

     [1] Employee Retirement Income Security Act, 29 U.S.C. § 1001,
et seq. ("ERISA").

1

judgment.  For the reasons stated below, the court DENIES Ekno's motion and GRANTS NWML's motion.[2]

## I.   BACKGROUND

On February 27, 2003, Ekno began working for the WaterEducation Foundation.  Administrative Record ("AR") 245, 267, attached to Decl. of Denise Lee ("Lee") (Docket at 22).  As an employee of the Water Education Foundation, Ekno was a member in a LTD plan ("Plan") insured by NWML.  AR 1-31.  The Plan excludes from coverage a disability "caused or contributed to by a Preexisting Condition" for employees, like Ekno, that have been members less than twenty-four months.  AR 10-11, 23.[3]  The Plan defines preexisting condition as: "a mental or physical condition for which [a member has] consulted a Physician Or Practioner, received medical treatment or services, or taken

---

[2] Inasmuch as the Court concludes the parties have submitted memoranda thoroughly discussing the law and evidence in support of their positions, it further concludes oral argument is neither necessary nor warranted with regard to the instant matter.  See Mahon v. Credit Bureau of Placer County, Inc., 171 F.3d 1197, 1200 (9th Cir. 1999)(explaining that if the parties provided the district court with complete memoranda of the law and evidence in support of their positions, ordinarily oral argument would not be required).

[3] The preexisting condition exclusionary time period for Ekno was March 5, 2003 to August 31, 2003, the one hundred and eighty day period before her insurance benefits became effective.  Pl.'s Undisputed Material Facts ¶¶ 12, 50; AR 25-26.  As such, Ekno did not become a "member" under the Plan until September 1, 2003.  AR 267.

prescribed drugs or medication at any time during the Preexisting Condition period . . ."  AR 10.

On September 30, 2004, Ekno stopped working for the Water Education Foundation.  AR 245.  On April 4, 2005, Ekno submitted an Employee Statement regarding her illness/disability.  AR 240-43.  In her Employee Statement, Ekno stated that she was unable to work because she could not, among other things, obtain restful sleep, concentrate for more than fifteen minutes, read for more than ten minutes, control mood, stay on task, or be around others.  AR 243.[4]  On April 19, 2005, Ekno's employer completed an Employer Statement for NWML.  AR 244-245.  On or about April 27, 2005, Ekno's treating physician, Jody Gordon, M.D., completed an Attending Physician Statement for NWML, determining that Ekno ceased work due to symptoms from the following medical conditions: prolactinoma,[5] major depression,

---

[4]  Ekno also stated that she was taking the following medications: (1) Levoxly (used to treat hypothyroidism); (2) Effexor (anti-depressant); (3) Alprazolam (used to treat anxiety and panic attacks); (4) Spironolactone (used to treat, among other things, hypertension); and (5) Bromocriptine (used to treat, among other things, amenorrhea).  AR 243.  Finally, Ekno stated that she first noticed her symptoms in the fall of 2004 and is currently unaware as to what precisely is causing her condition since she is still in the diagnostic phase.  AR 243.

[5]  Prolactinoma "is a benign tumor of the pituitary gland that produces a hormone called prolactin.  It is the most common type of pituitary tumor.  Symptoms of prolactinoma are caused by too much prolactin in the blood (hyperprolactinemia) or by pressure of the tumor on surrounding tissues.  Prolactin

and hypothyroidism.   AR 210-11.   Dr. Gordon noted that Ekno's symptoms were refractory severe depression with panic attacks, amenorrhea, hirsituism, HTN, acne and severe fatigue.   AR 211. Dr. Gordon concluded that Ekno was unable to return to work due to sever emotional instability and depression, panic attacks, loss of memory and ability to concentrate.   AR 211.   Dr. Gordon's planned course of treatment included: an endocrinology referral, bromocriptine, serial MRI, anti-depressants and anxiolytics.   AR 211.   Dr. Gordon's prognosis was that she anticipated Ekno's depression to improve and the anti-depressants to be more effective once her prolactin levels normalized.   AR 210.

In a letter dated June 1, 2005, NWML, through Ms. Lee, denied Ekno's claim for LTD benefits on the basis that Ekno was treated for depression during the preexisting condition exclusionary time period by Careen Whitley, M.D., on June 2,

---

stimulates the breast to produce milk during pregnancy.   After delivery of the baby, a mother's prolactin levels fall unless she breast feeds her infant.   Each time the baby nurses, prolactin levels rise to maintain milk production. . . . In women, high blood levels of prolactin often cause infertility and changes in menstruation.   In some women, periods may become irregular or menstrual flow may change.   Women who are not pregnant or nursing may begin producing breast milk.   Some women may experience a loss of libido (interest in sex).   Intercourse may become painful because of vaginal dryness."   AR 319-20.

2003.[6]   AR 329-31.   This letter expressly invited Ekno to submit additional medical information demonstrating that she "became disabled for a non-excluded condition" and promised that her claim would be reviewed "by an individual who was not involved with the original decision" to deny her claim.   AR 329-31.   In a letter dated July 7, 2005, Ms. Lee, again, denied Ekno's claim, despite Ekno's submission of additional medical information allegedly showing that she suffered from a disabling, non-preexisting condition.   AR 348-351.[7]   In accordance with the Plan's review procedures, Ekno appealed the denial of her claim to NWML's Quality Assurance Unit.   AR 475-479.   Following a review of Ekno's file by NWML's vocational consultant, Dr. Bradley Fancher ("Fancher"), NWML's Quality Assurance Unit

---

[6]   On June 6, 2003, Dr. Whitely saw Ekno for obesity, depression, reactive airway disease and menstrual irregularities (noting that polycystic ovarian syndrome needed to be ruled out).   AR 231.   During this visit, Dr. Whitley noted in Ekno's medical chart that she "sees a psychiatrist for chronic depression and stable on Celexa and Xanax."   AR 231. Dr. Whitley also requested "labs with LH/PSH, prolactin, DHEA test, thyroid panel and serum testosterone."   AR 231.

[7]   In the June 7, 2005 letter, Ms. Lee acknowledged that Ekno might be suffering from the non-preexisting disabling condition of prolactinoma but that she was not entitled to LTD benefits because this condition did not become disabling until after Ekno was no longer a member of the Plan.   AR 348-51.   Because NWML ultimately denied LTD benefits on the independent basis that Ekno's disability was due to chronic depressive disorder, and not prolactimona or an elevated prolactic level (AR 476), the court need not address the propriety of NWML's determination that Ekno was a not member of the Plan at the time she was diagnosed with prolactinoma.

affirmed the denial of Ekno's claim on the basis that her disability was caused or contributed to by depression, a condition in which she was treated and took prescription medication for during the preexisting condition exclusionary period.  AR 475-79.

On September 28, 2006, Ekno brought the instant action seeking recovery of wrongfully denied LTD benefits under ERISA, 29 U.S.C. § 1132.  Docket at 1.  On February 5, 2008, Ekno filed a motion for summary adjudication seeking a determination that judicial review of NWML's denial of LTD benefits is de novo. Docket at 13.   NWML filed a cross-motion seeking summary judgment on the basis that LTD benefits were properly denied because Ekno's disability was caused or contributed to by depression, a condition in which she was treated and took prescription medication for during the preexisting condition exclusionary time period.  Docket at 20.

## II.  DISCUSSION

## A.  Legal Standards

### 1. Rule 56(c)

Summary judgment/adjudication is appropriate where "there is no genuine issue as to any material fact" and "the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).  The moving party has the initial burden of identifying relevant portions of the record that demonstrate the

absence of a fact or facts necessary for one or more essential elements of each cause of action upon which the moving party seeks judgment. <u>See Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986). If the moving party has sustained its burden, the nonmoving party must then identify specific facts, drawn from materials on file, that demonstrate that there is a dispute as to material facts on the elements that the moving party has contested. <u>See</u> Fed. R. Civ. P. 56(c). In deciding whether the moving party is entitled to judgment as a matter of law, the court must consider the facts presented by the nonmoving party along with any undisputed facts. <u>See T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n</u>, 809 F.2d 626, 631, n.3 (9th Cir. 1987). In order to survive a motion for summary judgment/adjudication, the nonmoving party must present enough evidence for a reasonable jury to return a verdict in his or her favor. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 257 (1986).

On a motion for summary judgment/adjudication, all reasonable doubt as to the existence of a genuine issue of fact should be resolved against the moving party. <u>Hector v. Wiens</u>, 533 F.2d 429, 432 (9th Cir. 1976). The inferences drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. <u>Valadingham v. Bojorquez</u>, 866 F.2d 1135, 1137 (9th Cir. 1989). Where different ultimate

inferences may be drawn, summary judgment is inappropriate. Sankovich v. Insurance Co. of North America, 638 F.2d 136, 140 (9th Cir. 1981).  The purpose of summary judgment/adjudication is to "pierce the pleadings and assess the proof in order to see whether there is a genuine need for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). Thus, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Id.

**2. Standard of Review: ERISA Denial of Benefits Case**

Although NWML has filed a cross-motion for summary judgment under Rule 56(c), in an ERISA benefits case, the "traditional" summary judgment standards are not necessarily appropriate where the court is asked to review an ERISA plan administrator's decision. Bendixen v. Standard Ins. Co., 185 F.3d 939, 942 (9th Cir. 1999).  In an ERISA action, where the plaintiff is challenging the plan administrator's denial of benefits, if the district court determines that the administrator's decision is reviewed for abuse of discretion, "a motion for summary judgment is merely the conduit to bring the legal question before the district court and the usual tests of summary judgment, such as whether a genuine dispute of material fact exists, do not apply." Id. at 942 (finding that "[a]lthough there may be contradictory evidence in the record, we hold that, as a matter

of law, the plan administrator did not abuse its discretion"). Thus, a summary judgment motion resting on the administrative record is not a typical summary judgment, but rather, is a procedural vehicle for determining whether benefits were properly granted or denied. Accordingly, the threshold question is whether judicial review of NWML's denial of LTD benefits is de novo or abuse of discretion.

**B.    Applicable Standard of Review**

Ekno advances two arguments in support of her contention that NWML's denial of her claim for LTD benefits is subject to de novo review: (1) NWML's Plan does not confer discretionary authority on NWML to construe and interpret the Plan and to make final benefit determinations; and/or (2) the provisions in NWML's Plan purporting to grant discretionary authority on NWML are unlawful and unenforceable. Alternatively, Ekno argues that if the court determines that de novo review is not the proper standard of review, then it should afford little deference to NWML's decision to deny LTD benefits because NWML operated under a conflict of interest.

ERISA provides for judicial review of a decision to deny benefits to an ERISA plan beneficiary. See 29 U.S.C. § 1132(a)(1)(B). It also creates federal court jurisdiction to hear such a claim. See 29 U.S.C. § 1132(e). ERISA, however, does not specify what legal standard the court should apply when

reviewing a decision to deny benefits to an ERISA plan beneficiary. See Firestone Tire & Rubber v. Bruch, 489 U.S. 101, 109 (1989). In determining the standard of review in an ERISA denial of benefits case, the starting point is the wording of the plan. Abatie v. Alta Health & Life Ins. Co., 458 F.3d 955, 962-63 (9th Cir. 2006) (en banc). "When a plan does not confer discretion on the administrator 'to determine eligibility for benefits or to construe the terms of the plan,' a court must review the denial of benefits de novo 'regardless of whether the plan at issue is funded or unfunded and regardless of whether the administrator or fiduciary is operating under a possible or actual conflict of interest.' De novo is the default standard of review." Id. at 963 (citation omitted). If de novo review applies, the court must simply evaluate whether the plan administrator correctly or incorrectly denied benefits, without reference to whether the administrator operated under a conflict of interest. Id. However, "if the plan *does* confer discretionary authority as a matter of contractual agreement, then the standard of review shifts to abuse of discretion." Id. (emphasis in original). Under Ninth Circuit precedent, "for a plan to alter the standard of review from the default of de novo to the more lenient abuse of discretion, the plan must unambiguously provide discretion to the administrator." Id.

The relevant section of the Plan at issue here, entitled "Allocation of Authority," provides: "Except for those functions which the Policy and the Summary Of Insurance Benefits specifically reserve to the Policyowner or Employer, the Company has full and exclusive authority to control and manage the Policy and Summary Of Insurance Benefits, to administer claims, and to interpret the Policy and the Summary Of Insurance Benefits and resolve all questions arising in the administration, interpretation, and application of the Policy and Summary of Insurance Benefits." AR 6.  This section further provides: "The Company's authority includes, but is not limited to: The right to resolve all matters when a review has been requested; The right to establish and enforce rules and procedures for the administration of the Policy and the Summary of Insurance Benefits and any claim under them; The right to determine: (1) Your eligibility for insurance; (2) Your entitlement to benefits; (3) The amount of benefits payable to you; (4) The sufficiency and the amount of information the Company may reasonably require to determine 1, 2, or 3 above." AR 6.  Finally, this section provides: "Subject to the review procedures of the policy and the Summary of Insurance Benefits, any decision the Company makes in the exercise of the Company's authority is conclusive and binding."  AR 5.

Based on the foregoing provisions, the court concludes that the proper standard of review in this case is abuse of discretion because the Plan confers discretionary authority on NWML to construe and interpret the Plan and to make final benefit determinations.  See Abatie, 458 F.3d at 963-64 (review of the denial of benefits is abuse of discretion if a plan grants the power to construe and interpret the plan and to make final benefit determinations); see also Bendixen, 185 F.3d at 943 (finding nearly identical policy language sufficient to confer discretion on insurer to warrant application of abuse of discretion standard of review); Lawless v. Northwestern Mut. Life Ins. Co., 360 F. Supp. 2d 1046, 1054 (N.D. Cal. 2005) (same).  The court, however, is mindful that where, as here, a plan administrator both administers a plan and funds it, an inherent or structural conflict of interest exists, and the court must weigh the conflict as a factor in determining how much or how little to credit the plan administrator's reason for denying insurance coverage.  See Abatie, 458 F.3d at 965-69.  A court weighs such a conflict more or less "heavily" depending on what other evidence is available.  Id. at 968.  A conflicted administrator's decision is viewed with a low level of skepticism if the structural conflict of interest is unaccompanied by a lack of evidence of malice, self-dealing, or of a parsimonious claims-granting history.  Id.  But such a

conflict is weighed more heavily if the administrator provides inconsistent reasons for denial, fails adequately to investigate a claim or ask the plaintiff for necessary evidence, fails to credit a claimant's reliable evidence, or has repeatedly denied benefits to deserving participants by interpreting plan terms incorrectly or by making decisions against the weight of evidence in the record.   Id. at 968-69.[8]   When reviewing a discretionary denial of benefits by a plan administrator who is subject to a conflict of interest, the court must determine the extent to which the conflict influenced the administrator's decision and discount to that extent the deference accorded to the administrator's decision.   Saffon v. Wells Fargo & Co. Long Term Disability Plan, 511 F.3d 1206, 1212 (9th Cir. 2008).   In weighing a conflict of interest the court "is making something akin to a credibility determination about the insurance company's or plan administrator's reason for denying coverage

---

[8] In deciding how much weight to give a conflict of interest under the abuse of discretion standard, the court may consider evidence outside the administrative record that was before the plan administrator to determine whether a conflict of interest exists that would affect the appropriate level of judicial scrutiny.  Abatie, 458 F.3d at 970 (a district court, in its discretion, may consider evidence outside the administrative record to decide the nature, extent, and effect on the decision-making process of any conflict of interest; the decision on the merits, though, must rest on the administrative record once the conflict (if any) has been established, by extrinsic evidence or otherwise).

under a particular plan and a particular set of medical and other records." Id.

Next, because Ekno contends that NWML violated ERISA's procedural requirements as well as the Plan's claims handling procedures, the court turns to whether such violations justify de novo review of the administrator's decision. In Abatie, the court clarified the standard of review district courts should apply when administrators fail to follow procedural requirements of ERISA. Abatie, 458 F.3d at 971. There, the court stated that a decision by an administrator to deny benefits under a plan will be reviewed de novo when "an administrator engages in wholesale and flagrant violations of the procedural requirements of ERISA, and thus acts in utter disregard of the underlying purpose of the plan." Id. at 981. For instance, de novo review is appropriate where an administrator keeps the policy details secret from the employees, offers the employees no claims procedure, and does not provide the employees in writing the relevant plan information. Id. at 971. Finally, the Abatie decision clarified the standard of review to apply when there is evidence of procedural irregularities that cannot be characterized as wholesale and flagrant violations of ERISA procedural requirements. Id. at 972. In this regard, the court explained that: "A procedural irregularity, like a conflict of interest, is a matter to be weighed in deciding whether an

administrator's decision was an abuse of discretion . . . When an administrator can show that it has engaged in an 'ongoing, good faith exchange of information between the administrator and the claimant,' the court should give the administrator's decision broad deference notwithstanding a minor irregularity . . . A more serious procedural irregularity may weigh more heavily. Id. at 972. If procedural irregularities, even minor ones, have prevented full development of the record, the court may take additional evidence to, in essence, recreate the administrative record to reflect what the record should have been absent the irregularities. Id.

In this case, Ekno advances two reasons why a heightened standard of review is warranted: (1) NWML violated the Plan's claims handling procedures; and (2) NWML violated ERISA's procedural requirements by failing to fully and properly investigate her claim. Reviewing the record, however, the court cannot conclude that the administrator engaged in "wholesale and flagrant violations" of ERISA's procedural requirements or the Plan's claims handling procedures, to warrant de novo review. First, Ekno presented no compelling evidence or argument demonstrating that NWML engaged in wholesale or flagrant

violations of the Plan's claims handling procedures.[9]   Second, while Ekno contends that NWML violated ERISA's procedural requirements by ceasing to investigate her claim once it discovered that she was treated and prescribed medication for depression during the preexisting condition exclusionary time period,[10] the record contains evidence supporting NWML's decision to deny LTD benefits on this basis.   AR 231.   Additionally, the record indicates that Ekno was provided an opportunity to seek review of this decision and to submit additional medical evidence supporting her contention that she was disabled due to the non-preexisting condition of prolactinoma.   In this regard, the record indicates that Ekno submitted additional medical evidence, which was forwarded to NWML's Quality Assurance Unit and reviewed by NWML's consulting physician (Dr. Fancher) in

---

[9] The record does not contain evidence indicating that NWML kept policy details secret from Ekno, offered her no claims procedure, or failed to provide relevant Plan information in writing.   Rather, the record indicates that NWML provided Ekno with the relevant provisions of the Plan upon which it relied to deny LTD benefits as well as an explanation supporting this decision.   The record further indicates that NWML provided Ekno an opportunity to seek review of its decision and to submit additional medical information supporting her contention that her disability was caused by the non-preexisting condition of prolactinoma.

[10] In this regard, Ekno claims that NWML ceased investigating her claim even though it knew that Ekno had been diagnosed with the disabling non-preexisting condition of prolactinoma and had no evidence from a psychiatrist regarding her condition.

conjunction with other medical records before NWML rendered a final decision regarding Ekno's entitlement to LTD benefits. Accordingly, the record does not support Ekno's contention that NWML failed to fully investigate Ekno's medical condition before denying her claim for LTD benefits.[11]

To the extent that Ekno asserts that NWML did not perform a full investigation and independent review of her claim because NWML's consulting physician, Dr. Fancher, operated under a conflict of interest due to his close relationship with NWML and/or Standard Insurance Company, the court rejects this assertion. Ekno failed to point to any evidence, beyond the mere fact of an apparent conflict, demonstrating a serious conflict of interest that would support a finding that Dr.

---

[11] To the extent that Ekno argues that NWML violated the claims handling procedures of the Plan by failing to have a psychiatric consultant review her medical records (i.e., conduct an independent medical examination ("IME")), the court rejects this argument. Although Dr. Fancher recommended that it might be appropriate to have Ekno's claim reviewed by a psychiatric consultant, the Plan does not require NWML to have a psychiatric consultant independently review the claim of a member alleging a disability caused by a mental disorder. Moreover, Ekno does not cite, and this court could not find, binding case authority indicating that the failure to do an IME creates a conflict of interest. See Fought v. Unum Life Ins. Co. Of America, 379 F.3d 997, 1015 (10th Cir. 2004) (where a conflict of interest may impede an ERISA plan administrator's impartiality, the administrator best promotes the purposes of ERISA by obtaining an independent evaluation. However, such an IME is not required.). Nonetheless, the court finds that NWML's failure to conduct an IME is a circumstance that must be considered when determining whether NWML abused its discretion.

Fancher failed to provide an independent review of her claim.[12]

Therefore, because there is no evidence before the court of a serious conflict of interest, nor is there evidence of a wholesale or flagrant violation of ERISA's procedural requirements or the Plan's claims handling procedures, the court concludes that de novo review of NWML's decision to deny LTD benefits is improper. See Abatie, 458 F.3d at 971 (observing that procedural irregularities must be substantial, i.e., wholesale and flagrant violations, in order to alter the standard of review). Thus, abuse of discretion remains the appropriate standard of review. However, because a structural conflict of interest exists, the court will apply an abuse of discretion standard of review with slightly greater scrutiny.[13]

---

[12] "In order to establish a serious conflict, the beneficiary has the burden to come forward with 'material, probative evidence, beyond the mere fact of the apparent conflict, tending to show that the fiduciary's self-interest caused a breach of the administrator's fiduciary obligations to the beneficiary.' If the beneficiary cannot satisfy this burden, the district court should apply the traditional abuse of discretion review." Bendixen, 185 F.3d at 943 (citation omitted). There is no evidence before the court demonstrating that Dr. Fancher had any financial, or other, incentive to render an opinion adverse to Ekno.

[13] To the extent that Ekno argues that she is entitled to de novo review because the discretionary clause in NWML's Plan is unlawful and/or unenforceable pursuant to California Insurance Code § 10291, the court disagrees. Because Ekno's contract was in existence before the California Insurance Commissioner prohibited insurance companies from using discretionary clauses in insurance contracts, the discretionary clause at issue here

## C.   NWML's Denial of LTD Benefits

Applying the abuse of discretion standard of review, the sole issue before the court is whether NWML abused its discretion, or in other words, acted arbitrarily and capriciously, in denying Ekno's claim for LTD benefits.

When a court reviews the decision of a plan administrator for abuse of discretion, it cannot substitute its judgment for the administrator's, and therefore it can set aside the administrator's discretionary determination only when it is arbitrary and capricious.   Jordan v. Northrop Grumman Corp. Welfare Benefit Plan, 370 F.3d 869, 875 (9th Cir. 2004). A decision "grounded on *any* reasonable basis" is not considered arbitrary or capricious.   Id. (internal quotation marks omitted and emphasis in original).   Under the abuse of discretion standard, the issue before the court is not the Plan administrator reached the "correct" decision; but rather, whether there is substantial evidence in the record to support the decision.   Snow v. Standard Ins. Co., 87 F.3d 327, 331-32 (9th Cir. 1996) (abuse of discretion standard does not permit overturning a decision where there is "substantial evidence" to

is not unlawful and/or unenforceable.  See Saffon, 511 F.3d at 1211 (observing that, even assuming that the California Insurance Commissioner may prohibit insurance companies from using a discretionary clause in future insurance contracts, he cannot rewrite existing contracts so as to change the rights and duties thereunder).

support the decision--that is, where there is relevant evidence that reasonable minds might accept as adequate to support conclusion even if it is possible to draw two inconsistent conclusions from evidence), overruled on other grounds, Kearny v. Standard Ins. Co., 175 F.3d 1084 (9th Cir. 1999). Even decisions directly contrary to evidence in the record may not necessarily amount to an abuse of discretion. Taft v. Equitable Life Assur. Soc'y, 9 F.3d 1469, 1473 (9th Cir. 1993).

"An ERISA administrator abuses its discretion only if it (1) renders a decision without explanation, (2) construes provisions of the plan in a way that conflicts with the plain language of the plan, or (3) relies on clearly erroneous findings of fact." Boyd v. Bert Bell/Pete Rozelle NFL Players Retirement Plan, 410 F.3d 1173, 1178 (9th Cir. 2005) (citation omitted). A finding is clearly erroneous when although there is evidence to support it, the reviewing court, after considering all the evidence, is left with the definite and firm conviction that a mistake has been committed. Id. The decision of an ERISA plan administrator will be upheld "'if it is based upon a reasonable interpretation of the plan's terms and was made in good faith.'" Id.

In the present case, Ekno maintains that NWML abused its discretion in denying LTD benefits on the basis that her disability was caused by a preexisting condition of depression

for which she was treated and took medication for during the preexisting condition exclusionary time period. In this regard, Ekno argues that, although her medical records contain references that she was seeing a psychiatrist and receiving medications for depression during the preexisting exclusionary period, NWML nonetheless abused its discretion in denying LTD benefits because the record does not contain evidence demonstrating that she actually received treatment from a psychiatrist or took medication for depression during the preexisting condition exclusionary time period. The court disagrees. The record contains substantial evidence demonstrating that Ekno currently suffers from severe depression and was treated and took prescription medicine for depression during the preexisting condition exclusionary time period. AR 231. The record also contains evidence, based on a medical evaluation by a psychiatrist, demonstrating that Ekno has a long history of recurrent depression that began when she was twenty-nine (approximately ten years before she stopped working for the Water Education Foundation), and has been prescribed various anti-depressants over that span to treat bouts of depression that occur approximately twice-a-year. AR 195. Finally, while there is evidence in the record indicating that Ekno also

suffers from the non-preexisting condition of prolactinoma,[14] the record contains substantial evidence supporting NWML's conclusion that Ekno's disability was caused or contributed to by depression.  AR 195, 205-08, 222-23, 231, 417-20, 425, 431, 433.[15]

Accordingly, based on careful review of the record with heightened scrutiny, the court concludes that NWML did not abuse its discretion in denying LTD benefits.  The decision was not rendered without explanation, nor did Ekno demonstrate that NWML

---

[14] Dr. Gordon concluded that Ekno's disability is the result of a combination of her hyperprolactinemia, severe depression and anxiety and medication side-effects.  AR 444.

[15] Although Ekno's treating physician determined that her disability is the result of a combination of hyperprolactinemia, severe depression and anxiety and medication side-effects, this determination does not make NWML's decision to deny LTD benefits arbitrary or capricious.  See Black & Decker Disability Plan v. Nord, 538 U.S. 822, 834 (2003) (holding that courts have no warrant to require administrators automatically to accord special weight to the opinions of a claimant's physician; nor may courts impose on plan administrators a discrete burden of explanation when they credit reliable evidence that conflicts with a treating physician's evaluation).  In this case, NWML's decision was supported by specific reasons and based on reliable evidence in the record, i.e., grounded on a reasonable basis.  Moreover, Ekno has not identified a clearly erroneous finding of fact, nor has she shown that NWML arbitrarily refused to credit reliable evidence.  See Jordan, 370 F.3d at 879 (holding plan administrator, in accepting opinion of "reviewing physician" over opinion of plaintiff's treating physicians, did not abuse discretion, where reviewing physician's report included "serious reasons for his conclusions, and allowed for a reasonable independent judgment by [the plan administrator] in reliance on it").  Indeed, the opinion of Ekno's treating physician does not contradict or undermine NWML's determination that Ekno's disability was caused or contributed to by depression.

construed provisions of the Plan in a way that conflicted with the plain language of the Plan. Nor did Ekno demonstrate that NWML relied on clearly erroneous findings of fact, or arbitrarily refused to credit reliable evidence, or made its decision without a reasonable factual basis. As such, the court upholds NWML's decision to deny Ekno's claim for LTD benefits.

### III. CONCLUSION

For the reasons stated above, the court **DENIES** Ekno's motion for summary adjudication and **GRANTS** NWML's motion for summary judgment.

**IT IS SO ORDERED.**

ENTERED this 19th day of March, 2008.

s/RALPH R. BEISTLINE
United States District Judge